Good morning, Your Honors. I'd like to reserve three minutes, if I may, for rebuttal. Just watch the clock, counsel. I was counting down. May it please the Court, in this case, the Board of Immigration Appeals committed plain legal error by failing to shift the burden to the government upon a showing of past persecution. Under the regulations, an applicant for asylum or withholding of removal is entitled to a favorable presumption if he has suffered past persecution. You know the problem with this argument, and that is that it wasn't exhausted in front of the BIA, and therefore we don't even have any jurisdiction over it. I've taken a look at this brief, Respondent's Opening Brief, and conceitedly it's a pro se brief. But where does it raise this issue? Your Honor, it raises the issue by pointing to instances of past persecution and challenging the immigration judge's denial of his relief for asylum and withholding of removal. Well, I guess you would concede the statement of the issue doesn't relate to that at all. Your Honor, I would concede that this pro se individual on appeal to the BIA did not use the specific words in the regulation. But I would argue that by presenting clear evidence of past persecution, that was sufficient to raise the issue and to exhaust the issue. And he did raise several instances, examples of having been persecuted in the past. Well, but he says it's his family, family members who were persecuted. He specifically says, I didn't suffer any harm, me personally. I don't believe he says that he didn't suffer any harm personally. In his brief, he certainly does point to examples of his family members, including his father and brother. Where does he point to instances where he was allegedly persecuted? In the brief to the BIA, he – well, I think he, in his asylum application, he certainly cites numerous examples. He cites an example of having been attacked by a member of the PRD, brought into his home, having his camera destroyed, and then threatened with worse harms. Your Honor, I would also note that instances of persecution against family members are certainly relevant to whether or not he has shown past persecution, and examples of persecution of family members can suffice in and of themselves as a showing of past persecution. So as to the issue of – I hate to interrupt you, but let me read you this. There is some evidence that Respondent's family was acted upon by the government. However, there is not substantial evidence that the Respondent was a victim of any actions by the government of Panama. Your Honor, what you are quoting from is a quote from the IJ's opinion. So that is the Petitioner in his appellate brief quoting the IJ's findings, which he disagreed with. So that was the IJ's words that you just spoke, which, again, we disagree with. Where does he take exception to that? Well, I think that he says, well, Your Honor, in terms of exhausting the claim by presenting evidence of past persecution to his family members, I believe he has exhausted the claim of – that the issue of past persecution was presented. And, Your Honor, I think that the evidence of past persecution is plain and uncontradicted in the record, and that as a result of that, that the immigration judge should have and the BIA should have shifted the burden to the government under the plain language of the regulations. Counsel, now, the Petitioner here was removed to Panama, where he still is, I assume. He was removed, Your Honor. And the conviction, his conviction in the U.S. for kidnapping has become final, has it not? It has, Your Honor. Now, how does that change the situation? Well, in terms of this appeal, it ought not change anything, because the decision by the BIA was made on the record before it. And to the extent that the BIA relied on that non-final conviction at the time, I don't believe that this Court can find that to be, for example, harmless error. Isn't that super technical? I mean, it would be different if the conviction were overturned. But all that's happened is the conviction has now been final, and nothing has changed in terms of his conduct or the results of that trial. Your Honor, I don't believe it's highly technical, because before the immigration judge, the government specifically withdrew its allegation that he should be removed based on that conviction, which was non-final at the time. And therefore, the issue itself was not before the immigration judge. The issue of the import of that conviction was not before either the IJ or the BIA. So, Mr. Domenico. But if it goes back and that becomes an issue, how can you possibly win? Well, I think that's an issue for the BIA to decide, Your Honor, as to whether or not the now-final conviction ought to be a basis for removal. And I think the government concedes in their brief that that issue, at least they claim, has not been passed upon yet by the BIA. Well, there's also a timeliness problem here. Do we have jurisdiction over the withholding of removal issue? Absolutely, Your Honor. The withholding of removal does not have a time bar to it. It is the asylum application. Excuse me. You're quite right. It's the asylum issue. Do we have jurisdiction over the asylum and cat issues? Yes. And that is because the asylum application has a one-year time element, but that is not a hard and fast rule. There is an exception in the regulation. And, in fact, there are two examples of exceptions, one for changed circumstances and one for exceptional circumstances, extraordinary circumstances, I should say. And we argue that both are present here. And I would note that the Court need not find that both are present, but that the presence of just one would negate the one-year time bar entirely, such that Mr. Jimenez was only required to file within a reasonable time after changed circumstances or extraordinary circumstances. So if we agree with you, what are you asking us to do? Your Honors, we would be asking for a remand, a reversal of the failure to find past persecution, a finding that the government has not met its burden, that there is no way under this record that the government could meet its burden to rebut that favorable presumption because the government did not present an individualized analysis of why this particular applicant no longer has a well-founded fear. Well, I have to tell you on my part, I've looked very carefully at the record, and I fail to find significant evidence of persecution of this particular individual, harassment maybe, but not him. I mean, it all was aimed against his family, and he managed to avoid most of it. And so if there's no evidence of persecution, I mean, what's this all about? Plus he's been convicted now of a felony, kidnapping, and apparently there was a handgun  So the end game seems to be not in doubt. Your Honor, one, you said that most of it was directed at his family members, and I would concede most of it was, but there's certainly record in the evidence in the record of himself. I would point out that persecution of his family members is certainly relevant to the issue, and the persecution of his family members was offensive. His father was thrown in jail and had buckets of human excrement thrown on him, for And, Your Honor, I would like to point out your reference to the handgun. That is a mistake made by the immigration judge who read Mr. Jimenez's State of California appellate brief, which cited a case involving an individual who held a handgun, to distinguish that case from his own instance in which there was no allegation whatsoever of him holding a handgun. So who did he kidnap and how did he do it? Your Honor, Mr. Jimenez denied that he ever kidnapped I don't care what he denied. The allegations of the State were that he approached a woman in a parking lot and Did he know her? The allegations were that he did not know her. And? And that he approached her and attempted to move her away from that position. The evidence, if you look at the evidence in the record which was submitted by Mr. Jimenez, there was impeachment evidence. There was a lone witness. You're not going anywhere with that. You've got a standing conviction. You're trying to undercut the conviction, and it's there. Your Honor, I understand we're not in a position to collaterally attack that conviction. Right. I would like to note that the BIA has not had an opportunity to consider the importance of that conviction. And Mr. Jimenez has not had the opportunity to argue that that conviction is not a particularly serious crime such that he ought to be removed on that basis. I'm getting the impression that this whole thing is a stall. Your Honor, respectfully, we don't believe so. And I see that my time is running out. I'd like to reserve some time for rebuttal. You can answer my question about the stall. Well, it's not a stall. I don't understand where this is going. Where it is going is that when Mr. Jimenez presented his claim to the BIA, he was entitled to relief, and he ought to be granted that relief. And as a matter of law, because he, for example, his claim for withholding of removal, he was entitled to a presumption, a favorable presumption. He was not given that. The government failed to present any evidence to rebut that presumption, and therefore under the law, he is entitled to withholding of removal. Why don't you save your time, counsel, for the rebuttal? Thank you, Your Honor. We'll hear from the government. May it please the Court. Thomas Futuros for the Attorney General. Mr. Jimenez Clement recognized one inexorable fact about his claim. The military dictatorship of Manuel Noriega ended in 1989 and was replaced by a functioning democracy, constrained by a constitution, and adhering to the rule of law. Accordingly, he presented a claim of future persecution. And Judge Trott, this is largely because he wasn't persecuted in the past. He said something's happened in the future, specifically in 2004, and that new government is going to harm me. That is the claim that the immigration judge considered, and that's the claim that the board considered and rejected before coming to this Court. And that's the claim that now is the substantive claim that is no longer before this Court, because they haven't argued that he faces a well-founded fear of future persecution. It was proper for the agency to look at this as a claim of future persecution. First and foremost, if we look at the regulations, as Petitioner has asked us to do, it sets forth a ladder, several rungs, of how we look at asylum claims. Generally, they begin with an asylum applicant demonstrating persecution or attempting to demonstrate persecution. And if he does, then the second rung would be the government's burden to then show that some fundamental change has occurred in the country that now obviates that fear. And then the third rung would be the alien coming forward and saying, notwithstanding that, I still fear going back for some future reason. Mr. Jimenez-Clement came before the agency on the second rung. He said, yes, I admit that things fundamentally changed after Noriega, that there was a democracy, there is a democracy, there's a Constitution. In fact, I didn't fear the government. I went back to Panama. And then I came back to the United States and lived here for some ten years without seeking asylum because I didn't fear the government. So he's saying, I'm on rung number two. Yes, things changed. But I'd like to move to rung number three, which is I now fear the government. Something has happened down there, a 2004 election. And that government, or at least that portion of the government, because we have a divided government in Panama with the three branches, but the leadership and the Well, the agency promptly said, well, what is your proof of that? And that is where Mr. Jimenez-Clement's claim failed. He had no proof that anything had changed in 2004 that would affect his asylum claim, that now someone was going to come after him. And that is what the agency evaluated. And that's what we now we're not arguing about anymore because there is no record evidence that that 2004 government would harm him. Now, that's all to do with the asylum claim. The asylum claim and the withholding claim, they just have a different standard. There's a past – there would be a past persecution presumption. So where are we with respect to the jurisdictional issue? That affects the asylum claim, does it not? In other words, was the petition timely filed? Well, that is the second legal issue here. What I was presenting was discussing what the agency looked at. And they were looking at the court. No, I understand that. My question is, if we agree with the government as to the timeliness problem, then we don't reach that issue, is that correct? No, we still reach that issue for withholding because – For withholding but not for asylum. Yes. So the fact that it's a new application affects withholding. And I think the agency appropriately looked at this as a withholding claim and said this is a forward-looking claim. With regard to asylum, the board specifically said to us that even if this 2004 election was a change, if you didn't apply within a reasonable period of time, the court generally would not have jurisdiction to review that. That's what the statute says. However, the precedent of this Court has indicated that in many instances, the Court does review that type of finding. And in this case, the only excuse that he came up with is that he was – he had kidnapped someone and was going through the judicial system. Well, the regulation answers that question, that it can't be of your own making, this extraordinary circumstance. Would you address Mr. Russell's argument that notwithstanding that the conviction for kidnapping is now final, that he's still entitled to have the BIA or the IJ reconsider that whole issue? Well, Your Honor, in our responsive brief, I don't – the criminal conviction, whether final or not, was not relevant to what the board decided. Because at the end, the board decided on the substance. You don't get withholding because you don't have a fear of future persecution. The immigration judge issued a discretionary denial of asylum, and that seemed to be based on the actions involving this criminal conviction. The board then evaluates his withholding claim on the merits. Remember, the only thing that would preclude him from getting withholding would be a finding that what he had committed was a dangerous or violent crime. And there's no finding of that yet. And that would be appropriate if it went back to determine whether this crime did preclude withholding, but he still could get withholding under CAT, a restriction on removal under CAT. So at the end, it is irrelevant whether he's convicted or not. It does now create problems for him when he comes back. The bigger issue, I think, for him is this idea that he was presenting a new claim. He had this new theory that this 2004 government was going to retaliate against everyone who caused the overthrow of Noriega. Again, we're looking into the future. This is what they're going to do. He had no proof of this. And that's what the board found. Again, forward-looking. It's also a different claim, which is another reason why this case is not about past persecution. The past persecution presumption, according to the regulation, you get a presumption on the same basis or on the basis of the original claim. Before Noriega, he was a dissident journalist who the dictator was attempting to silence. Now, there's no more dictator, and the government affirmatively protects the freedom of the press. So Mr. Jimenez's claim was conceptually sound. He said, well, no, I'm not claiming I'm a journalist, a dissident journalist anymore. Rather, I'm on this list of enemies that this government is going to go after because we caused the overthrow of Noriega. Not only that, he's looking forward, speculating that Noriega is going to be released from prison and, in some of his papers, returned to Panama. Well, if his name is on a list and that's verified, isn't that relevant evidence? It's a very – I think that that is his theory. And that's why this is a future persecution claim. This new government, are they doing that? Really? And that was his burden to show. And, of course, the record doesn't demonstrate that at all. There's no evidence, much less compelling evidence, that this government elected in 2004 was going after, you know, former critics of Noriega at all. That's where the claim failed. That's what the immigration judge, when he's talking about connecting these dots, well, yes, even if you proved you did all these things under Noriega, what – is this new government? You tell us this democracy is a good one and you didn't fear it for a period of time. Well, what changed with this election? And that's where his evidence failed. And it would be good to be talking about that substance of that claim because, you know, that is what even pro se aliens do. They have two ways of demonstrating persecution. They did this to me in the past. They're going to do it to me again. Or don't send me back there. They're going to hurt me. And no matter when we talk about technicalities and shifting burdens and things like that, Mr. Jimenez-Clement clearly presented this claim, this new government is going to hurt me in the future, and he wasn't able to prove it. And that's the claim that Petitioner has walked away from, I think, because there's no evidence in the record that that would happen. And, in fact, you run into another problem. The problem with democracies for autocrats would be that you're answerable to an electorate. And the 2004 election happens and there's a 2009 election and there's a different party in power now. So things constantly change. This is a functioning democracy. But it was, most importantly, a forward-looking claim, and that's the way the agency analyzed it. The fourth reason that this is a forward-looking claim would be that he needs new facts. Not only does he need a new claim, but because we have a democracy operating under the rule of law, he says, well, they're going to use my criminal past as some sort of cover to harm me. This is, I believe, a recognition that the country report says there are zero political dissidents in Panama. No one's in jail. So this new government would need some sort of cover to do so. And he says, well, they're going to use my criminal convictions or lies, and I think he calls them lies, that they've spread about him to besmirch his good name so they have cover to do this. Again, a new fact about a new claim about a new government doing these things. And, again, his problem, not conceptually, but was factually, he couldn't prove any of that because there was no evidence that the government was maintaining such a law. Do we know anything from the record about how he's being treated today in Panama? No, we don't. No, we don't. But, again, we have this fundamental change after Noriega, and we have a democracy. We have parties going back and forth. And merely because he says, well, now this named party has similar characters from the past, all of a sudden, I, my past prosecution claim is revived. Well, this sort of yo-yo idea of you get it sometimes, you don't get it sometimes seems quite odd. And I think the agency properly said, well, once we've determined that things have been going on for a while, that's when the decision starts. And you're talking about a new claim because you want us to consider it because you are so late. Once you admit all those things, then tell us why you fear this new government. That's your burden. Show us why you fear this new government. And that is where he failed. And that's what this case is no longer about, because we're not arguing about that. For these reasons and the reasons set forth in our brief, the decision of the board should be affirmed.  Thank you, counsel. Mr. Russell, you have some reserve time. Your Honors, I believe the government spent approximately 80 percent of his time talking about the subject of changed country circumstances, changed country conditions. Those are facts that are relevant to the regulatory analysis after the burden has shifted to the government. Under the regulations, if there is a showing of past persecution, the burden shifts to the government, at which point, had the BIA actually shifted the burden, it might have been in a position to analyze whether there were, whether there was a fundamental change in circumstances. But Noriega is no longer in power. I don't understand your argument. The argument is that it's on the government to bring forth that argument and to – let me give Your Honor an example of two cases in which similar facts came up, the Hanna case, which we cite in our brief, and the Krabchuk case, which we cite in our brief. In the Hanna case, the applicant for asylum had suffered persecution at the hands of the pre-Saddam – during the Saddam regime in Iraq. And he was seeking asylum after Saddam Hussein had come out of power. And the Ninth Circuit said, we realize there has been a change in government, but that is a fact that's relevant to whether the government can rebut the favorable presumption that arises based on the past persecution under the prior administration. And similarly, Your Honor, in the Krabchuk case, that case involved before and after the fall of the Soviet Union. And again, the Ninth Circuit said the BIA erred as a matter of law by discounting the evidence of past persecution on the basis of the fall of the Soviet Union. Counsel, why do you have almost 100 pages of stuff in this brief that shouldn't be here? Your Honor, we submitted the relevant – You have page after page after page after page of stuff that's irrelevant. Baseball players, strikes. I mean, this is – I've never seen a brief like this before. Is this your standard practice? Your Honor, certainly not our standard practice to waste the Court's time. That was the record that was in the evidence that was submitted. No, it's not. You have – there's tons and tons and tons of pages of law in here. Did you put this together? Your Honor, I take responsibility for that, and I apologize if we failed to comply with the rules. I was attempting to, on behalf of my client, put forth the elements of the record that were required under the rules and pointing the Court to relevant regulations that we cited in our brief. And to the extent that I failed to do that – Well, I've never seen anything like this before. It's not helpful. Don't do it again as far as I'm concerned. Yes, Your Honor. I appreciate that. I apologize for that. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Campbell, O'scannlain, Trott